

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

METROPOLITAN RETINA ASSOCIATES,
P.C., DR. KENNETH S. FELDER, M.D.,

          Defendants.

18 Civ. 9146

## STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL

WHEREAS, this Stipulation and Order of Settlement and Dismissal (the "Stipulation" or "Agreement") is entered into by and among the United States of America (the "United States" or "Government"), by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS); and Defendants Metropolitan Retina Associates, P.C. ("Metropolitan Retina")and Dr. Kenneth S. Felder, M.D. (collectively, "Defendants" and together with the Government, the "Parties"), by their authorized representatives;

WHEREAS, Metropolitan Retina is an ophthalmology practice located in Manhattan and Brooklyn with Dr. Kenneth S. Felder as the sole owner and sole physician at the practice;

WHEREAS, contemporaneous with the filing of this Stipulation, the United States is filing a Complaint (the "Complaint"), in which it asserts claims against Defendants under the False Claims Act, 31 U.S.C. § 3729 *et seq.*("FCA");

WHEREAS, the Complaint alleges that from April 1, 2010 to November 31, 2017 (the "Covered Period"), Defendants submitted or caused to be submitted to the Medicare and Medicaid programs false claims for: (a) Fluorescein Angiograms that were either distorted or were executed in such a way that the images captured lacked any diagnostic or medical value;

and (b) ultrasounds of the eye that either were not performed or were not supported by the medical record documentation (the "Covered Conduct");

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable resolution addressing the claims against Defendants in the Complaint for the Covered Conduct;

NOW, THEREFORE, upon the Parties' agreement IT IS HEREBY ORDERED:

## TERMS AND CONDITIONS

1.    The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2.    Defendants admit, acknowledge, and accept responsibility for the following conduct:

   a.   During the Covered Period, Defendants submitted claims to Medicare and Medicaid for Fluorescein Angiograms and ultrasounds of the eye.

   b.   A Fluorescein Angiogram is a procedure in which a medical professional injects a dye into the bloodstream, which highlights blood vessels in the back of the eye, and then photographs those blood vessels. This test is used to manage a variety of eye disorders.

   c.   An ultrasound of the eye is a procedure in which high-frequency sound waves are transmitted from a probe to the eye in order to produce a detailed image of the eye and eye orbit. These images can help reveal various pathologies of the eye.

   d.   During the Covered Period, Defendants frequently submitted claims to Medicare and Medicaid for Fluorescein Angiograms that lacked any diagnostic or medical value because the images were distorted and/or were taken from angles that made it impossible to evaluate the patient's conditions. Medicare or Medicaid would not have paid for these procedures had they known that the Fluorescein Angiograms lacked any diagnostic or medical value.

   e.   During the Covered Period, Defendants frequently submitted claims to Medicare and Medicaid for ultrasounds of the eye that either were not performed or were not supported by any medical record documentation. Medicare and Medicaid would not have paid for these procedures had they known that these ultrasounds either were not performed or were not supported by documentation in the medical records.

2

f.  As a result of billing for the medical procedures described above, Defendants received substantial reimbursement from Medicare and Medicaid to which they were not entitled.

3.      Defendants shall pay to the Government within fourteen (14) business days of the Effective Date (defined below in Paragraph 22) the sum of $2,064,559 (the "Settlement Amount"), of which $1,032,279.50 constitutes restitution to the United States, plus interest which shall be compounded annually at a rate of 2.125% accruing from the Effective Date to the date of the payment.  Defendants shall be jointly and severally liable to the Government for the Settlement Amount.  The Settlement Amount shall be paid by wire transfer in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York.

4.      Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Stipulation.  Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of any directors, officers, and employees of Metro Retina, and shall use best efforts to make available, and encourage, the cooperation of former directors, officers, and employees of Metro Retina for interviews and testimony, consistent with the rights and privileges of such individuals.  Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in their possession, custody, or control concerning any investigation of the Covered Conduct that Defendants have undertaken, or that has been performed by another on their behalf.

5.      Subject to the exceptions in Paragraphs 8 and 12 below (concerning excluded claims and bankruptcy proceedings), and conditioned upon Defendants' full compliance with the terms of this Stipulation, including full payment of the Settlement Amount to the United States

pursuant to Paragraph 3 above, the United States releases Defendants, including their subsidiaries and corporate predecessors, successors, and assigns, from any civil or administrative monetary claim that the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; and the common law theories of fraud, payment by mistake, and unjust enrichment. For avoidance of doubt, this Stipulation does not release any current or former officer, director, employee, or agent of Defendants from liability of any kind.

6.     In consideration of the obligations of Defendants in this Stipulation, and the Integrity Agreement (IA), entered into between OIG-HHS and Defendants, and conditioned upon Defendants' full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Defendants under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 7 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Defendants from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 8, below.

7.      Defendants fully and finally release the United States, its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, employees, servants, or agents related to the Covered Conduct and the United States' investigation, prosecution and settlement thereof.

8.      Notwithstanding the releases given in Paragraph 5 above, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

      a.   any liability arising under Title 26, United States Code (Internal Revenue Code);

      b.   any criminal liability;

      c.   except as explicitly stated in this Stipulation, any administrative liability, including but not limited to the mandatory exclusion from Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion); suspension or debarment pursuant to 2 C.F.R. Part 376; or actions pursuant to, or otherwise consistent with, 42 C.F.R. § 52.9, 45 C.F.R. §§ 75.207- 75.208, or 45 C.F.R. §§ 75.371-75.375;

      d.   any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.   any liability based upon obligations created by this Stipulation; and

      f.   any liability of individuals not named herein.

9.      Defendants shall be in default of this Stipulation if Defendants fail to make the required payment set forth in Paragraph 3 above on or before the due date for such payment, or if they fail to comply materially with any other term of this Stipulation ("Default").  The Government shall provide written notice to Defendants of any Default in the manner set forth in Paragraph 22 below.  Defendants shall then have an opportunity to cure the Default within ten (10) calendar days from the date of delivery of the notice of Default.  In the event that a Default is not fully cured within ten (10) calendar days of the delivery of the notice of Default ("Uncured Default"), interest shall accrue at the rate of 12% per annum compounded daily on the remaining unpaid principal balance of the Settlement Amount, beginning ten (10) calendar days after mailing of the notice of Default.  In the event of an Uncured Default, Defendants shall agree to the entry of a consent judgment in favor of the United States against Defendants in the amount of the Settlement Amount as attached hereto as Exhibit A.  The United States may also, at its option, (a) rescind this Stipulation and reinstate the claims asserted against Defendants in the Government Complaint; (b) seek specific performance of this Stipulation; (c) offset the remaining unpaid balance of the Settlement Amount from any amounts due and owing Defendants by any department, agency, or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity.  Defendants shall not contest any offset imposed or any collection undertaken by the Government pursuant to this Paragraph, either administratively or in any Federal or State court.  In addition, Defendants shall pay the Government all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses.  In the event that the United States opts to rescind this Stipulation pursuant to this Paragraph, Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches,

estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct.

10.     Defendants waives and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

11.     Defendants represent and warrant that they have reviewed their financial situation, that they are currently not insolvent as such term is defined in 11 U.S.C. § 101(32), and that they reasonably believe that they shall remain solvent following payment to the Government of the Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Stipulation, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

12.     If within 91 days of the Effective Date of this Stipulation or any payment made under this Stipulation, Defendants commence any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors or a third party

commences any case, action, or other proceeding under any law related to bankruptcy,
insolvency, reorganization, or relief of debtors (a) seeking an order for relief of Defendants'
debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment
of a receiver, trustee, custodian, or other similar official for Defendants or for all or part of
Defendants' assets, Defendants agree as follows:

    a. Defendants' obligations under this Stipulation may not be avoided pursuant to
11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position
in any such case, action, or proceeding that (i) Defendants' obligations under
this Stipulation may be avoided under 11 U.S.C. § 547; (ii) Defendants were
insolvent at the time this Stipulation was entered into; or (iii) the mutual
promises, covenants, and obligations set forth in this Stipulation do not
constitute a contemporaneous exchange for new value given to Defendants.

    b. If any of Defendants' obligations under this Stipulation are avoided for any
reason, including, but not limited to, through the exercise of a trustee's
avoidance powers under the Bankruptcy Code, the Government, at its option,
may rescind the release in this Stipulation and bring any civil and/or
administrative claim, action, or proceeding against Defendants for the claims
that would otherwise be covered by the release in Paragraph 5 above.
Defendants agree that (i) any such claim, action, or proceeding brought by the
Government would not be subject to an "automatic stay" pursuant to 11 U.S.C.
§ 362(a) as a result of the case, action, or proceeding described in the first
sentence of this Paragraph, and Defendants shall not argue or otherwise contend
that the Government's claim, action, or proceeding is subject to an automatic

stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any claim, action, or proceeding that is brought by the Government within 60 calendar days of written notification to Defendants that the release has been rescinded pursuant to this Paragraph, except to the extent such defenses were available on April 1, 2016; and (iii) the Government has a valid claim against Defendants in the amount of the Settlement Amount and the Government may pursue its claim in the case, action, or proceeding described in the first sentence of this Paragraph, as well as in any other case, action, or proceeding.

c.  Defendants acknowledge that the agreements in this Paragraph are provided in exchange for valuable consideration as provided in this Stipulation.

13.  Defendants agree to the following:

a.  Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Stipulation;

(2) the United States' audit(s) and civil investigation(s) of matters covered by this Stipulation;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in

9

connection with matters covered by this Stipulation (including attorneys' fees);

(4) the negotiation and performance of this Stipulation;

(5) any payment Defendants make to the United States pursuant to this Stipulation; and

(6) the negotiation of, and obligations undertaken pursuant to the IA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the IA; and (ii) prepare and submit reports to the OIG-HHS

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs"). However, nothing in paragraph 13.a.(6) that may apply to the obligations undertaken pursuant to the IA affects the status of costs that are not allowable based on any other authority applicable to

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Stipulation, Defendants shall identify to

applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents and repay by adjustment to future claims for payment or otherwise any Unallowable Costs (as defined in this Paragraph) included in payments previously sought by Defendants from the United States or any State Medicaid program.  Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  Any payments due shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.   The United States, including the Department of Justice and/or the affected agencies, reserves its right to audit, examine, or re-examine Defendants' books and records and to disagree with any calculation submitted by Defendants or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amounts of such payments.

d.  Nothing in this Stipulation shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

14.    This Stipulation is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity except as otherwise provided herein.

15.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

16.     Any failure by the Government to insist upon the full or material performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full or material performance of any and all of the provisions of this Stipulation.

17.     This Stipulation is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York.  For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

18.     This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof.  This Stipulation may not be amended except by written consent of the Parties.

19.     The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and the entities indicated below.

20.     This Stipulation is binding on Defendants' successor entities.

21.     This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation.  E-mails that attach signatures in PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

22.    Any notice pursuant to this Stipulation shall be in writing and shall, unless

expressly provided otherwise herein, be delivered by hand, express courier, or e-mail

transmission followed by postage-prepaid mail, and shall be addressed as follows:

TO THE UNITED STATES:

JACOB M. BERGMAN
BRANDON COWART
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007
Telephone:  (212) 637-2776/2693
Email:  jacob.bergman@usdoj.gov
         brandon.cowart@usdoj.gov

TO DEFENDANTS METROPOLITAN RETINA ASSOCIATES, P.C. OR
DR. KENNETH S. FELDER, M.D.

Lawrence F. Kobak
Fritz & Levitt
84 Bloomfield Avenue
Pine Brook, NJ 07058
Telephone:  (212) 596-9000
Email: lkoback@frierlevitt.com

13

23.   The effective date of this Stipulation is the date upon which the Stipulation is approved by the Court (the "Effective Date").

Dated:       New York, New York
             _10_/_5_____, 2018

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York
                              Attorney for Plaintiff United States of America

                       By:   _____
                              JACOB M. BERGMAN
                              BRANDON COWART
                              Assistant United States Attorneys
                              86 Chambers Street
                              New York, NY 10007
                              Telephone:  (212) 637-2776/2693
                              Email:  jacob.bergman@usdoj.gov
                                      brandon.cowart.@usdoj.gov

Dated:       _october_____
             __3____, 2018

                       BY:   _____
                              LISA M. RE
                              Assistant Inspector General for Legal Affairs
                              Office of Counsel to the Inspector General
                              Office of Inspector General
                              United States Department of
                              Health and Human Services

14

Dated: New York, New York
    10 15, 2018

METROPOLITAN RETINA ASSOCIATES, P.C.

By: _____
    Dr. Kenneth S. Felder, M.D.

Dated: New York, New York
    10 15, 2018

DR. KENNETH S. FELDER, M.D.

By: _____
    Dr. Kenneth S. Felder, M.D.

Dated: New York, New York
    10 15, 2018

Frier & Levitt
Attorneys for METROPOLITAN RETINA
ASSOCIATES, P.C. and
DR. KENNETH S. FELDER, M.D.

By: _____
    LAWRENCE F. KOBAK
    Frier & Levitt
    84 Bloomfield Avenue
    Pine Brook, NJ 07058
    Telephone: (516) 222-2400
    Email: lkoback@frierlevitt.com

SO ORDERED:

Nov 1, 2018

_____
Alison J. Nathan, U.S.D.J.

15